# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| **CASSIE DAVIS** | * |
| | * |
| **v.** | * |
| | *     Civil No. JKS 09-2545 |
| **MICHAEL J. ASTRUE** | * |
| **Commissioner of Social Security** | * |
| | * |

## MEMORANDUM OPINION

Claimant Cassie Davis brought this action pursuant to 42 U.S.C. §405(g), for review of a final decision of the Commissioner of Social Security (Commissioner) denying her disability insurance benefits (DIB) under Title II of the Social Security Act (Act), 42 U.S.C. §§ 401-403, and Supplemental Social Security Income (SSI) payments under Title XVI of the Social Security Act, 42 U.S.C. §§ 1382 *et seq*. The parties consented to referral to a United States Magistrate Judge for all proceedings and final disposition. Davis' and Astrue's motions for summary judgment are ready for resolution and no hearing is deemed necessary. *See* Local Rule 105.6. For the reasons set forth below, Davis' motion for summary judgment will be denied, and Astrue's motion for summary judgment will be granted.

**I. Background.**

Davis first filed an application for DIB and SSI benefits under Titles II and XVI, respectively, of the Social Security Act on Aug. 18, 2003 (R. 16, 49, 268) due to renal insufficiency, nephritic syndrome, hypertension, hepatitis C and hyperlipidemia. (R. 55). Although she initially alleged an onset date of June 17, 2003, (R. 268), Davis later amended her alleged onset date to June 15, 2006. (R. 379, 393). The Social Security Administration first denied her claim on May 18, 2004 (R. 34-37) and upon reconsideration on Aug. 26, 2004. (R. 41-44).

Davis requested a hearing before an Administrative Law Judge, (R. 45), and the hearing was held on April 19, 2005. (R. 282-301). The ALJ, on May 18, 2005, found that Davis was not disabled within the meaning of the Act. (R. 16-24, 325-33). The Appeals Council denied her request for review on January 25, 2006. (R. 346). On March 16, 2007, pursuant to order from the U.S. District Court the District of Maryland (Civ. No. JKS-06-663), the Appeals Council remanded Davis' case to the ALJ.

Davis' second hearing before the ALJ was held on July 24, 2007. (R. 361-75). The ALJ again found, on Sept. 5, 2007, that she was not disabled within the meaning of the Act. (302-16). Pursuant to an order from the District Court, the Appeals Council again remanded the claim to the ALJ on Sept. 8, 2008. (R. 408-09).

On May 26, 2009, the ALJ held a third hearing for Davis. (R. 391-403). Again, on July 29, 2009, the ALJ denied the claim. (R. 379-89). This decision is now the Commissioner's final determination as to this claim. On Sept. 29, 2009, Davis filed for timely review in this court.

## II. ALJ's Decision.

The ALJ evaluated the DIB and SSI claims under a five-step sequential evaluation process contained in 20 CFR 416.920(a) and 416.1520(a), respectively, that is used to determine whether an individual is disabled under the Social Security Act. First, the ALJ determined that Davis has not engaged in substantial gainful activity since the alleged onset date. (R. 381). At step two, the ALJ concluded that Davis has the following severe impairments: bipolar disorder, a history of drug and alcohol abuse, hepatitis C, hypertension, a history of renal insufficiency, a history of liver disease, and obesity. (R. 381). The ALJ determined at step three, however, that these impairments or their combination did not meet or medically equal one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1. (R. 382). At step four, the ALJ

determined that, although Davis does not have the residual functional capacity (RFC) to resume any past relevant work, she has an RFC to perform a limited range of light work. (R. 382). Finally, at step five, the ALJ determined that, considering Davis' age, education, work experience and residual functional capacity, jobs exist in significant numbers in the national economy that she can perform. (R. 387). As a result, the ALJ concluded that Davis has not been under a disability, as defined in the Social Security Act, from June 15, 2006 through the date of his decision (R. 388).

## III. Standard of Review.

The role of this court on review is to determine whether substantial evidence supports the Commissioner's decision and whether the Commissioner applied the correct legal standards. 42 U.S.C. § 405(g); *Pass v. Chater,* 65 F.3d 1200, 1202 (4th Cir. 1995). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). It is more than a scintilla, but less than a preponderance, of the evidence presented. *Shively v. Heckler*, 739 F.2d 987, 989 (4th Cir. 1984). It is such evidence that a reasonable mind might accept to support a conclusion, and must be sufficient to justify a refusal to direct a verdict if the case were before a jury. *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1995). This court cannot try the case *de novo* or resolve evidentiary conflicts, but rather must affirm a decision supported by substantial evidence. *Id*.

## IV. Discussion.

Davis raises two broad issues on appeal. The first is that the ALJ failed to follow the proper procedure for analyzing Davis' mental impairments. The second issue is that the ALJ erroneously assessed Davis' RFC.

3

### A. The ALJ Followed the Proper Procedure for Analyzing Davis' Mental Impairments.

Despite the ALJ's finding that she had a severe mental impairment of bipolar disorder, Davis first claims the ALJ failed to follow the required special technique to substantiate the presence of the impairment. She alleges that this technique required the ALJ to complete a Psychiatric Technique Review Form. Davis next claims that the ALJ failed to perform a "more detailed assessment" by itemizing Davis' functions based on her bipolar disorder.

The special technique to substantiate a mental impairment evaluates a claimant's pertinent symptoms, signs, and laboratory findings[1] to determine whether she has a medically determinable mental impairment(s). 20 C.F.R. §§ 404.1520a(b)(1) and 416.920a(b)(1). The ALJ does this by first rating the degree of the functional limitation based on the extent to which the impairment interferes with the claimant's ability to function independently, appropriately, effectively, and on a sustained basis. *Id.* at (c)(2). The ALJ then rates the claimant's degree of limitation in activities of daily living, social functioning, and concentration, pace and persistence, as either none, mild, moderate, marked, or extreme, and also rates episodes of decompensation as either none, one or two, three, four or more.[2] *Id.* at (c)(3). The ALJ must then use these ratings to determine if the impairment meets, or is equivalent to, a listed mental disorder. *Id.* at (d)(2). If the ALJ finds that the claimant has a severe mental impairment that neither meets nor is equivalent in severity to any listing, the ALJ will then assess the claimant's residual functional

---

[1] Symptoms are the claimant's own description of an impairment. 20 C.F.R. §§ 404.1528(a) and 416.928(a). Signs, particularly psychiatric signs, are medically demonstrable abnormalities of behavior, mood, thought, memory, orientation, development, or perception that can be observed. *Id.* at (b). Laboratory findings can be shown by the use of medically acceptable laboratory diagnostic techniques; in the case of mental impairments, these are psychological tests. *Id.* at (c).

[2] The last point on each scale represents a degree of limitation that is incompatible with the ability to do any gainful activity. 20 C.F.R. §§ 404.1520a(c)(3) and 416.920a(c)(3). Episodes of decompensation are exacerbations or temporary increases in symptoms or signs, as manifested by difficulties in performing activities of daily living, maintaining social relationships, or maintaining concentration, persistence, or pace. 20 C.F.R. Pt. 404, Subpt. P, App. 1(C)(4).

4

capacity (RFC). *Id.* at (d)(3). The ALJ's decision must include a specific finding as to the degree of limitation in each of the functional areas described in §§ 404.1520a(c) and 416.920a(c). *Id.* at (e)(2).

The regulation that formerly required an ALJ to use a Psychiatric Review Technique Form has been amended to eliminate this requirement. *See* 20 C.F.R. § 404.1520a(d).[3] Now, instead of completing a form, the ALJ only has to document use of the "special technique." *Burke v. Astrue*, 306 Fed. App'x. 312, 315 (7th Cir. 2009) (citing *Carpenter v. Astrue*, 537 F.3d 1264, 1268 (10th Cir. 2008)). In *Burke,* the Court found that the ALJ properly performed the special technique by rating the claimant in the four functional areas and providing a finding as to the degree of limitation in each area. *Burke*, at 315. If a reviewing court can discern "what the ALJ did and why he did it," the duty of explanation is satisfied; "administrative verbosity or pedantry" is not needed. *See Piney Mountain Coal Co. v. Mays,* 176 F.3d 753, 762 n. 10 (4th Cir. 1999) (noting that, even in a close call, a reviewing judge need only discern "what [the ALJ's] conclusions are and on what evidence they rest.")

Here, substantial evidence supports the ALJ's evaluation of Davis' mental impairments and resulting limitations. The ALJ based his determination that Davis' bipolar disorder was a severe impairment on Davis' medical and treatment records, including examinations by Dr. Brady McKaig and Dr. Allison Malcolm. (R. 383-86). In considering this evidence, the ALJ determined that Davis' mental impairment did not satisfy the "C" criteria of the mental

---

[3] The 2000 version of this regulation begin as follows: (d) Preparation of the document. A standard document outlining the steps of this procedure must be completed by us in each case at the initial, reconsideration, administrative law judge hearing, and Appeals Council levels (when the Appeals Council issues a decision). Subsequent versions begin as follows: (d) Use of the technique to evaluate mental impairments. After we rate the degree of functional limitation resulting from your impairment(s), we will determine the severity of your mental impairment(s). No "document" is not mentioned in the versions since 2000.

5

impairment listings.⁴ *Id.* In addition, the ALJ noted that no physician in the record had indicated findings that would suggest Davis' impairment satisfies any condition in the listing. (R. 382). Based on the medical and non-medical evidence, the ALJ determined that Davis has: mild restrictions of daily living; moderate difficulties in maintaining social functioning; moderate difficulties in maintaining concentration, persistence or pace; no episodes of decompensation. (R. 385).

Davis argues that the ALJ did not fully consider the opinions of Dr. McKaig, Dr. Malcolm, and counselor Mary Hughes, an R.N. On the contrary, the ALJ discussed both Dr. McKaig's and Dr. Malcolm's opinions and addressed one report from Nurse Hughes along with several other counseling reports from Pathways, where Nurse Hughes worked. The ALJ noted that Dr. McKaig's June 15, 2006 psychiatric evaluation "revealed no evidence of tics or other motoric abnormality . . . [and] [s]he was oriented in all three spheres with average intelligence and fair insight and judgment as to the degree of her psychiatric difficulty." (R. 384). The ALJ took note of Dr. McKaig's Global Assessment of Functioning (GAF) scoring of Davis but gave that score and "any similar assessment made at a later time" little evidentiary weight, noting that GAF scores are snapshots that vary widely over time. *Id.* n. 2. Here, the score of 50 was given on the date of onset, June 15, 2006, nearly three years before Davis' counsel posed the question to the Vocational Expert (VE) about the significance of that score. (R. 384, 402). In addition,

---

⁴ Under 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.04, Affective disorders: To meet the severity requirement under the listing, a person's a disturbance of mood must be accompanied by a full or partial manic or depressive syndrome. A depressive person must have at least four of the nine symptoms listed to meet the requirement; a manic person must have at least three of another eight symptoms listed; and a history of episodic periods manifested by the full symptomatic picture of both manic and depressive syndromes (and currently characterized by either or both syndromes). In addition, to meet the severity requirement, the person must also show at least two of the following: marked restriction of activities of daily living; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence, or pace; or repeated episodes of decompensation, each of extended duration. A "marked" limitation interferes seriously with the claimant's ability to function independently, appropriately, effectively, and on a sustained basis. Under 20 C.F.R. Pt. 404, Subpt. P, App. 1(C).

the Social Security Administration has clarified that it does not endorse the use of GAF in Social Security disability programs and that the GAF scale does not correlate to severity requirements in the mental disorders listings. *See* Revised Medical Criteria for Evaluating Mental Disorders and Traumatic Brain Injury, 65 Fed. Reg. 50,746-01, 50764-65 (Aug. 21, 2000).

The ALJ also considered Dr. Malcolm's August 2007 evaluation of Davis (R. 429-32), but was entitled to give it less weight. An ALJ may give reduced weight to medical opinions if they are inconsistent with the record as a whole, including the claimant's own testimony as to her daily activities. 20 C.F.R. §§ 404.1527(d)(4) and 416.927(d)(4); *see Craig v. Chater*, 76 F.3d 585, 590 (4th Cir. 1996) (noting that if a physician's opinion is not supported by clinical evidence or is inconsistent with other substantial evidence, it should be accorded significantly less weight). The ALJ determined that "Dr. Malcolm's conclusions were apparently based in large part, if not entirely, on the claimant's subjective allegations rather than any objective clinical findings." (R. 385). The ALJ also found Dr. Malcolm's findings inconsistent with Davis' own testimony as to her ability to care for her granddaughters as well as independently cook, clean, take public transportation, and attend church. (R. 385-86).

Finally, the ALJ also acknowledged that Davis resumed counseling with Nurse Hughes, (R. 384), and mentioned one specific counseling report in which Nurse Hughes referred to Davis as being depressed because she had sought a job and not been hired. (R. 385, Exh. 20F/6). The ALJ also included in his narrative several reports from Dr. Manjula Borge and two other employees at Pathways. (R. 385) (Exs. 21F/2-21/F4, F7, F8).

During the May 26, 2009, hearing, her third such appearance, Davis testified as to her age, most recent job, ability to perform daily tasks such as cooking and cleaning, and the last time she had used alcohol and illegal drugs. (R. 394-97). Carefully observing Davis during the

7

hearing, the ALJ noted that "her verbal responses and overall demeanor were not suggestive of a person who is experiencing disabling mental or physical limitations" and that she was able to adequately answer questions. (R. 386-87).

Davis' counsel had an opportunity to bring out evidence that Davis' mental impairments had created a disability that prevented her from working, or would be expected to prevent her from working, during a 12-month continuous period, as required by 20 CFR 404.1509. If a claimant has counsel, an ALJ is "entitled to rely on the claimant's counsel to structure and present the claimant's case in a way that the claimant's claims are adequately explored." *Hawkins v. Chater,* 113 F.3d.1162, 1167-68 (10th Cir. 1997). Davis' counsel elicited that she has been mostly free of alcohol and drug abuse since the onset date and that rocking back and forth during the hearing made her feel more comfortable, (R. 397–98), and elicited from the VE that a person with GAF scores below 50 would not be capable of sustaining full-time employment, (R. 402), but the ALJ, as noted above, explained his reasons for giving such scores little weight.

Finally, Davis' counsel noted during the hearing that Davis may be able to work if she can stay clean and sober. (R. 386, 394). The ALJ concluded that her sobriety "relates to her mental condition, not any physical impairment", (R. 386), indicating that Davis' bipolar disorder was not the main mental factor preventing her from working.[5]

Based on the foregoing reasons, the ALJ properly determined that Davis' mental condition had not prevented her from doing any substantial gainful activity for 12 continuous months or that it would prevent such gainful activity for 12 continuous months.

---

[5] An individual shall not be considered to be disabled if alcoholism or drug addiction would be a contributing factor material to the Commissioner's determination that the individual is disabled. 42 U.S.C. 423(d)(2)(c) (defining "disability" for the purpose of receiving insurance benefit payments).

### B. The ALJ Properly Assessed Davis' RFC.

Davis' second argument is that the ALJ erroneously assessed her RFC. Specifically, Davis argues that the ALJ did not perform a function-by-function assessment after finding severe impairments. She contends that the ALJ failed to make a logical bridge between her impairments and exertional categories reflecting the physical and mental demands of work.

The RFC is the most work an individual can do, despite her limitations, for eight hours a day, five days a week. 20 CFR §§ 404.1545(a)(1), 416.945(a)(1); SSR 96-8p, 1996 WL 374184, at *2. An RFC assessment must include a function-by-function assessment based upon the claimant's functional limitations and ability to do work-related activities. SSR 96-8p, 1996 WL 374184, at *3.

A function-by-function analysis is desirable, but SSR 96-8p does not require ALJs to produce such a detailed statement in writing. Rather, the ALJ "must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." *Id.* at *7. The ALJ "must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis (i.e., 8 hours a day, for 5 days a week, or an equivalent work schedule), and describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record." *Id.*, 61 Fed. Reg. 34474-01, 34478, 1996 WL 362207; *see also Lewis v. Astrue*, 518 F. Supp. 2d 1031 (N.D. Ill. 2007) (finding that SSR 96-8p does not create a function-by-function articulation requirement but instead only requires the ALJ to *"consider,* not articulate" a claimant's RFC on a function-by-function basis); *Banks v. Astrue*, 537 F. Supp. 2d 75, 84-85 (D.D.C. 2008) (weighing several conflicting cases on the RFC narrative requirement and concluding that an ALJ need only

explain an "individual's ability to perform sustained work activities in an ordinary work setting on a regular basis," and "describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record").

Here, the ALJ appropriately used medical and non-medical evidence in assessing Davis' RFC. The ALJ examined the entire record, including medical opinions that predated Davis' amended onset date, and evaluated them in light of Davis' own appearance and testimony at the hearing. (R. 382-87, 394-99). The ALJ concluded that the evidence did not reveal any continuous, 12-month period when Davis was unable to work. (R. 386).

Davis argues that the ALJ failed to explain her limited use of her dominant hand. However, Davis appeared at the second hearing on July 24, 2007, with her arm in a sling, testifying that it "hurts off and on," and the ALJ asked the VE to consider the effect of limited dominant hand usage on job availability for someone in the Davis' condition (R. 370-72). At the third hearing, the ALJ noted that the claimant "was not in any obvious discomfort when walking into and out of the hearing room" and did not allege any physical impairments. (R. 386). Nevertheless, the ALJ, gave "some benefit to her treatment history, even if rather remote," by including the limited dominant hand usage as a factor for the VE to consider in the 2009 hearing. (R. 400-01).

Davis also argues that the ALJ failed to explain any limitations linked to her bipolar disorder, which the ALJ had found to be a severe impairment. If a symptom can be reasonably controlled by medication or treatment, it is not disabling. *Gross v. Heckler*, 785 F.2d 1163, 1166 (4th Cir. 1986). The ALJ found that Davis' bipolar disorder did not cause "disabling limitations," relying on the June 15, 2006 examination by Dr. McKaig, (R. 384), and treatment notes from that date through December 2008, which indicated that she improved while on

medications and off alcohol and declined when the reverse was true (R. 384-85). Although Davis did not allege any side effects from her medications, the ALJ took notice of Ex. 21F/7 (R.426), which stated that the side effects could include irritability and fatigue. The ALJ concluded that such side effects would be consistent with assigning Davis to tasks involving limited public contact. (R. 386).

Davis alleges that the ALJ overlooked or ignored treatment records of her knee and back disorders. If a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight. *Craig v. Chater*, 76 F.3d 585, 590 (4th Cir. 1996). An ALJ can give less weight to earlier medical reports, even from treating physicians, where there is persuasive contrary evidence. *Carmickle v. Comm'r, Soc. Sec. Admin.,* 533 F.3d 1155, 1165 (9th Cir. 2008) ("Because "[m]edical opinions that predate the alleged onset of disability are of limited relevance,' the ALJ did not err in according less weight to the opinions of [the petitioner's treating physician]."). The ALJ noted that Davis had not had treatment for physical ailments since April 2005, more than a year before her amended onset date. (R. 386). Davis also did not bring up any physical ailments at the 2009 hearing and testified to being able to live alone, cook, clean, and independently use public transportation, activities that the ALJ found to be "inconsistent with her allegation of total disability." (R. 384). Nevertheless, the ALJ gave Davis' back and knee conditions some weight by including the sit/stand option as a condition for the VE to consider during the third hearing. (R. 400-01).

The claim that the ALJ ignored evidence of treatment by Nurse Hughes also fails. The ALJ mentioned Hughes by name and noted her first session with Davis. (R. 355, 384-85). Davis' four sessions with Hughes occurred from December 2006 to March 2007. (R. 355-58).

11

The evidence from these older sessions was inconsistent with her own testimony at the third hearing (R. 396, 398), and statements by her attorney that Davis could return to work if she could remain clean. (R. 394). In developing the record, however, the ALJ went beyond these sessions and documented Davis' therapy appointments with other Pathways personnel through March 2009. Therefore, the ALJ gave the evidence from the Hughes sessions its appropriate weight as required by 20 CFR 1527(d)(4) and 416.927(d)(4).

Davis' next contention is that the ALJ did not evaluate the impact of her weekly drug and alcohol treatment on her ability to perform substantial gainful activity. An individual shall not be considered disabled if alcoholism or drug addiction would be a contributing factor to the determination that the individual is disabled. 42 U.S.C. 423(d)(2)(c). In determining whether alcohol and drug addiction is a material factor, an ALJ must evaluate a claimant's RFC in the absence of drug and alcohol addiction and also whether a claimant can perform his or her past relevant work or other work which exists. *Matney v. Apfel*, 48 F. Supp. 2d 897, 902 (W.D.Mo. 1998). Although the ALJ did not address Davis' weekly 15 hours of treatment for drug and alcohol abuse, nothing in the record shows this amount of time was *required* to treat a condition so disabling that it left her incapable of performing substantial gainful activity. The ALJ cited substantial evidence in the record to show that the claimant performed better when she took her medications and did not drink, and performed worse when the reverse was true (R. 385-86). The ALJ also noted that Davis' own attorney stated that she may be able to work if she can stay clean and sober. (R. 386, 394). The ALJ, therefore, correctly discounted the Pathways sessions in his analysis.

Davis further argues that the ALJ determined that Davis had moderate difficulties in maintaining concentration, persistence, or pace, but failed to include these limitations in the RFC

12

assessment. She argues that the ALJ's conclusion that she "retains the ability despite her impairments to perform . . . unskilled, light work," *id.,* is insufficient.

In giving full individualized consideration to all relevant facts, the ALJ must produce a Vocational Expert to testify whether jobs exist that the claimant has the capacity to perform. *Grant v. Schweiker,* 699 F.2d 189, 192 (4th Cir. 1992). For the VE's testimony to be relevant or useful, the ALJ must ask proper hypothetical questions that include all of the claimant's impairments. *Walker v. Bowen,* 889 F.2d 47, 50 (4th Cir. 1989). The ALJ, however, may limit his questions to those limitations he deems credible. *See English v. Shalala,* 10 F.3d 1080, 1085 (4th Cir. 1993) (noting that an ALJ must propound questions to the expert based upon a consideration of all the relevant evidence in the record).

Here, the hypothetical questions that the ALJ posed to the VE, (R. 400-01), mirrored his conclusions as to Davis' RFC. Although the ALJ did not specifically mention that Davis had moderate difficulties in maintaining concentration, persistence, or pace, the ALJ established that the VE had been present during Davis' testimony and had reviewed Davis' exhibit folder prior to that day's hearing. (R. 399–00). Even if an ALJ poses an incomplete hypothetical to a VE, the omission "may be cured by a showing that prior to testifying the [VE] reviewed the claimant's record containing the omitted information." *Ragsdale v. Shalala,* 53 F.3d 816, 820 (7th Cir. 1995); *see also Melgarejo v. Astrue,* 2009 WL 5030706 at *5 (where the VE testified that he had reviewed the claimant's file and was present during her hearing, the court could conclude that the VE took into account all of the claimant's limitations). Davis' exhibits folder contained medical records dating back to before her original onset date in 2003, through the Pathways treatments in 2009 (R. 3 -7C). Davis' counsel did not object to the use of the VE's record review to supplement the hypothetical question, and this review cures any omission in the hypothetical.

13

In sum, the ALJ properly assessed Davis' residual functional capacity.

**V. Conclusion.**

For the foregoing reasons, Davis' motion for summary judgment will be denied, and Astrue's motion for summary judgment will be granted. A separate Order will be entered.


Date:  December 15, 2010                                             /S/
                                                            JILLYN K. SCHULZE
                                                        United States Magistrate Judge